DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Jihad W. Id-Din aka Obie Brooks has appealed his conviction from the Summit County Court of Common Pleas that found him guilty of one count of burglary, in violation of R.C. 2911.12(A)(1). This Court affirms.
 I {¶ 2} On October 20, 2003, Appellant was indicted on one count of burglary, in violation of R.C. 2911.12(A)(1). Following a jury trial on January 13, 2004, Appellant was found guilty as charged in the indictment. On January 14, 2004, the trial court sentenced Appellant to six years incarceration.
 {¶ 3} Appellant has timely appealed his burglary conviction, asserting three assignments of error. For ease of analysis, we have consolidated his first and second assignments of error.
 II Assignment of Error Number One
"Appellant's conviction of burglary was contrary to the manifest weight of the evidence."
 II Assignment of Error Number Two
"The trial court erred in failing to grant appellant's [crim.r. 29] motion to dismiss the burglary charge following the conclusion of the state's case."
 {¶ 4} In his first and second assignments of error, Appellant has argued that his burglary conviction was against the manifest weight of the evidence and based on insufficient evidence.[1] Specifically, Appellant has asserted that the "testimony of the witnesses contain internal contradictions and is not supported by the evidence" and that the State did not prove all of the necessary elements of burglary. We disagree.
 {¶ 5} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks, 61 Ohio St.3d paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
 {¶ 6} In State v. Roberts, this Court explained: "[S]ufficiency is required to take a case to the jury. * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. (emphasis omitted).
 {¶ 7} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339,340.
 {¶ 8} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than it supports the other. Thompkins,78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. at 388. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court.Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 {¶ 9} Appellant was convicted of burglary, in violation of R.C. 2911.12(A)(1). Pursuant to R.C. 2911.12(A)(1):
"(A) No person, by force, stealth, or deception, shall do any of the following:
"(1) Trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense[.]" R.C. 2911.12(A)(1).
 {¶ 10} During the trial, the State presented testimony from four witnesses. Deborah Williams ("Williams") testified to the following. Williams lives at 550 Weber Avenue in Akron, Ohio. On September 23, 2003, Williams was sitting in her kitchen when someone started banging on her back kitchen door. There was "something fierce about the banging" so Williams didn't open it, but looked out and asked "What do you want?" The person responded, "Do you have a car for sale?" and she answered "No. No." There was not a car in her driveway and she did not have any sort of sign in her yard indicating that she was selling a car. Williams had not placed an advertisement in the paper about a car for sale and she had not received any phone calls about a car for sale.
 {¶ 11} Williams' testimony continued. She told the person that she was not selling a car and the person turned around and started walking away. Williams could not clearly see the person's face because of the plastic on her back window and door, but when she went to the front of her house she was able to see the person's clothes clearly. The person was wearing a red, white, and blue stars and stripes Fila jacket. The person was also wearing a stars and stripes flag headband. The person's skin tone was light to medium brown. The person was African-American, but Williams could not tell if the person was a man or a woman.
 {¶ 12} Williams further testified that she watched the person walk up the hill from her house and that Mr. Lehrman lives about four houses up from her house. The person was carrying what looked like a little black briefcase or pocketbook in his hand. Williams watched the person walk past one house and then decided to call the police.
 {¶ 13} During the State's direct examination of Williams it played a 911 tape and confirmed that she was the caller on the tape and that the jury was listening to her 911 call. Williams can be heard on the audiotape informing the dispatcher that a "black person" just pounded on her door asking her if she had a car for sale. Williams told the dispatcher due to the plastic on her door she was not sure if the person was male or female, but that they were wearing a red, white and blue Fila stars and strips jacket and a red, white, and blue headband. Williams can be heard telling the dispatcher that the person was carrying a short briefcase or purse and that she thought it was strange that someone came to her house asking if she was selling a car.
 {¶ 14} Further testimony from Williams revealed that she did not notice if the person was carrying an orange and brown afghan and that she would have been able to see it had the person had the afghan on when the person was at her house.
 {¶ 15} On cross-examination Williams continued her testimony, stating the following. It is possible that someone could have been knocking on her front door and she would not have been able to hear them from the kitchen. Since her garage was closed, one would not be able to see if there was a car in the garage. The only reason she called the police was because she thought it was odd that someone came to her back door and asked if she had a car for sale and then slowly walked away when told she did not have a car for sale. Her house has doorbells on the front and back doors and she did not hear either bell ring that day.
 {¶ 16} The victim, Walter Lehrman ("Lehrman"), testified to the following. He lives at 583 Weber Avenue in Akron, Ohio, which is on the corner of Weber and Charlotte Street. Lehrman's house has a walkway from the driveway that leads up to the front door, which has a doorbell.
 {¶ 17} Lehrman continued his testimony stating the following. He was home on September 23, 2003 and around 5:00-5:15 p.m. he was talking on the phone to a friend in his bedroom on the second floor of his house. Lehrman usually wears a hearing aid in each ear, but when he was talking on the phone that day he was not wearing his hearing aids. While he was talking on the phone he heard an unusual noise, a kind of noise he had never heard before. Lehrman continued his conversation and then listened to the radio.
 {¶ 18} Lehrman's testimony continued. Lehrman went downstairs and noticed that the door to the screen porch was open, which was unusual because he never leaves that door open and it is always locked with a deadbolt. The back door, which leads onto the screen porch, had been broken open. The bolt of the lock was twisted and the doorjamb was splintered. The door was locked before Lehrman went upstairs. Lehrman also noticed that the downstairs telephone was off the hook.
 {¶ 19} Further testimony from Lehrman revealed the following. Upon realizing the house had been broken into, Lehrman immediately called the police. Approximately fifteen to twenty CDs and an afghan were stolen. The afghan was "orange, or kind of a reddish-orange, brown, dark brown * * * [with] some beige and some green in it."
 {¶ 20} During Lehrman's direct examination, the State played a second 911 call and Lehrman verified that it was the call he placed when he realized his house had been broken into. Lehrman can be heard on the audiotape telling the dispatcher that someone just broke into his house. He told the dispatcher that his door was broken, that he did not notice if anything was missing, and that he did not see anyone.
 {¶ 21} Lehrman concluded his testimony by stating that he did not see who broke into his home or who stole his belongings; that he did not give Appellant permission to be in his house that day and Appellant did not give him permission to have his afghan; that he never identified the afghan for the police; and that his property was never returned.
 {¶ 22} Officer Lamm of the Akron Police Department, testified to the following for the State. Officer Lamm was on duty on September 23, 2003 when the call came across the radio about a suspicious person knocking on a back door at a Weber Avenue home. The person was described as "a person with an American flag bandana on the head, a track suit with stars on the sleeves, carrying something." Officer Lamm and his partner responded to the area and "noticed a person matching the description at Doyle and Aqueduct, which is pretty close to Weber." The officers exited their vehicle and talked to Appellant. Appellant told the officers that he was walking home from work, but he did not mention anything about cars.
 {¶ 23} Officer Lamm's testimony continued and illustrated the following. When Appellant was questioned specifically about knocking on doors, he stated that he read an ad and was trying to buy a car so he was looking for the person that was selling the car. Appellant didn't know the address of the seller. Officer Lamm didn't notice if Appellant had a newspaper with him. Appellant matched the clothing description and he was carrying a "black leather, black nylon, like tool bag." Appellant also had an orange and brown crocheted afghan over his right shoulder.
 {¶ 24} Officer Lamm continued his testimony stating the following. At the time Officer Lamm first spoke with Appellant no report of a burglary had been made so he did not inquire about the black bag or the afghan. Officer Lamm's partner completed a field information card on Appellant taking down his general personal information and description. While talking to Appellant, a radio broadcast informed the officers that a burglary had occurred at 583 Weber Avenue. Officer Lamm asked the dispatcher if she had a clothing description of the suspect because they felt that Appellant was connected in some way, but the call did not contain a suspect description. At that time the officers had no legal grounds to hold Appellant so they proceeded to 583 Weber and Appellant walked westbound on Doyle Street.
 {¶ 25} Further testimony from Officer Lamm revealed the following. Lehrman's back door had pry marks on it and splintering wood around the frame. Officers walked around the house with Lehrman and it was then that Lehrman noticed his afghan and CDs were missing. The afghan Lehrman described matched the one Appellant was wearing on his right shoulder.
 {¶ 26} Officer Lamm continued, testifying to the following. After responding to Lehrman's house the officers believed Appellant was a suspect in the burglary so they went to look for him. Appellant was no longer on the corner of Doyle and Aqueduct, but they spoke with witnesses who told them that right after the officers left Appellant "took off running down the street." The officers then proceeded to Appellant's house where they were informed by Appellant's aunt that Appellant was not home. Appellant's aunt gave the officers permission to enter the house and look for Appellant, but Appellant, the black bag and the afghan were not located in the house. After the proper paperwork was completed an arrest warrant for burglary was issued for Appellant.
 {¶ 27} On cross-examination Officer Lamm testified to the following. Appellant would have had roughly sixteen minutes to leave Williams' house, go to Lehrman's house and burglarize it and get back to the corner of Doyle and Aqueduct, but such activity was possible in that time frame. No fingerprints were taken from Lehrman's house and no tools were recovered. When Appellant was questioned on the corner of Doyle and Aqueduct he was not out of breath, sweating, or wearing gloves. Appellant willingly talked to officers, but his story changed during the course of the conversation.
 {¶ 28} Officer Lamm concluded his testimony by testifying to the following. He believed Appellant was connected to the burglary because of the activity at Williams' house, the time frame of the events and the afghan that Appellant was seen wearing, which matched the afghan taken from Lehrman's house. The similarities between the knocking on Williams' back door and the entry into Lehrman's home through the back door drew the officers to Appellant. There were no indicators outside Williams' or Lehrman's houses that someone was home inside.
 {¶ 29} Detective Paul Hooper ("Det. Hooper") of the Akron Police Department testified to the following. Det. Hooper interviewed Appellant after his arrest and asked Appellant if he remembered being stopped on September 23, 2003 when he was wearing a stars and stripes bandana on his head; Appellant stated he remembered being stopped. Appellant remembered having a bag, but he did not remember having an orange and brown afghan-type blanket over his shoulder. Det. Hooper told Appellant it was odd that Appellant remembered everything else that the officers described except for the afghan and Appellant responded, "Do you have the blanket now?" Det. Hooper informed Appellant that the blanket was not recovered. When Det. Hooper asked Appellant about Lehrman's house Appellant stated he did not know what Det. Hooper was talking about.
 {¶ 30} After Det. Hooper's testimony, the Court admitted the State's exhibits, which included a map, two Akron Police Department printouts and an audiotape containing the 911 calls from Williams and Lehrman. The State then rested its case. Appellant made a Crim.R. 29 motion, claiming "the State had failed to prove each and every element of the crime of burglary as alleged." The trial court denied Appellant's motion. Without calling any witnesses, Appellant rested his case. The jury returned a guilty verdict and Appellant was sentenced to six years incarceration. After the judge sentenced Appellant, Appellant renewed his Crim.R. 29 motion.
 {¶ 31} After careful review of the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, this Court cannot conclude that the trial court clearly lost its way when it found Appellant guilty of burglary. The trial court was in the best position to adjudge the credibility of witnesses and give proper weight to their testimony. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The credible testimony of Williams, Lehrman, Officer Lamm and Det. Hooper established that Appellant committed the crime as charged.
 {¶ 32} Based on the foregoing, this Court cannot find that Appellant's conviction was against the manifest weight of the evidence. Accordingly, Appellant's first assignment of error lacks merit.
 {¶ 33} As previously stated, "a determination that [a] conviction is supported by the weight of the evidence [is] also * * * dispositive of the issue of sufficiency." Roberts, supra at 4. Accordingly, having found that Appellant's conviction was not against the manifest weight of the evidence, this Court need not discuss further his challenge to the sufficiency of the evidence. Therefore, Appellant's second assignment of error is not well taken.
 Assignment of Error Number Three
"The trial court's sentence was contrary to law since it did not take into account fundamental sentencing principles, express sentencing criteria, or make findings pursuant to [r.c. 2929.14(b)]"
 {¶ 34} In his third assignment of error Appellant has argued that the trial court erred when it sentenced him beyond the minimum sentence. Specifically, Appellant has asserted that since the trial court did not sentence him to the shortest prison term and it failed to make the R.C. 2929.14(B) findings, the sentence must be modified or the case remanded. We disagree.
 {¶ 35} When reviewing a sentence on appeal, an appellate court "may increase, reduce, or otherwise modify a sentence" or it may vacate the sentence and remand the matter for resentencing. R.C. 2953.08(G)(2). Pursuant to R.C. 2953.08(G)(2):
"The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
"(a) That the record does not support the sentencing court's findings under division (B) or (D) of [R.C. 2929.13] * * *;
"(b) That the sentence is otherwise contrary to law." R.C2953.08(G)(2).
Clear and convincing evidence is:
"`[T]hat measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.'" State v.Eppinger (2001), 91 Ohio St.3d 158, 164, quoting Cross v.Ledford (1954), 161 Ohio St. 469.
 {¶ 36} Appellant has asserted that the trial court erred when it did not state the proper findings when it sentenced him beyond the minimum prison sentence for his conviction. As previously noted, Appellant was convicted of burglary, in violation of R.C.2911.12(A)(1), which is a felony of the second degree.
 {¶ 37} Pursuant to R.C. 2929.14(A):
"[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender * * * and is not prohibited by[R.C. 2929.13(G)(1)] from imposing a prison term on the offender, the court shall impose a definite prison term that shall be one of the following:
"* * *
"(2) For a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years."
 {¶ 38} Pursuant to R.C. 2929.14(B): "[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense * * * unless one or more of the following applies:
"(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term." R.C. 2929.14(B)(1). (Emphasis added).
 {¶ 39} Pursuant to R.C. 2929.14(B)(1), if a defendant has previously served a prison term the trial court need not impose the shortest prison sentence or make findings for why it declined to do so. See State v. Pruiett, 9th Dist. No. 21796, 2004-Ohio-3256, at ¶ 28. In the present case, Appellant confirmed the State's assertion during sentencing that Appellant had served two prior prison sentences, one for a murder conviction and the other for an aggravated burglary conviction. Also, the trial court indicated in its sentencing journal entry that Appellant had served a prior prison term and that he was on parole at the time of the burglary. Having complied with the statutory requirements of R.C. 2929.14(B), this Court finds that Appellant has failed to demonstrate by clear and convincing evidence that the trial court acted contrary to law when it imposed a sentence that exceeded the minimum prison term.
 {¶ 40} Based on the foregoing, Appellant's third assignment of error is not well taken.
 III {¶ 41} Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgement affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, J., Boyle, J., Concur.
[1] This Court notes that the record does not clearly indicate that Appellant renewed his Crim.R. 29 at the close of his case. The record shows that Appellant made his Crim.R. 29 motion at the close of the State's case and then renewed it, but the timing seems flawed, which could allow this Court to disregard Appellant's sufficiency challenge. However, Appellant did appeal on manifest weight grounds and manifest weight is dispositive of sufficiency; accordingly, this Court will address both arguments.